```
1  JOSEPH P. RUSSONIELLO (CABN 44332)
   United States Attorney
2
   BRIAN J. STRETCH (CABN 163973)
3  Chief, Criminal Division

4  AARON D. WEGNER (CABN 243809)
   Assistant United States Attorney
5
       450 Golden Gate Avenue, Box 36055
6      San Francisco, California 94102
       Telephone: (415) 436-6831
7      Facsimile: (415) 436-6982
       E-Mail:  aaron.wegner@usdoj.gov
8
   Attorneys for the United States of America
9
```

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA ) | No. CR 09-0103 CRB |
| ) | |
| ) | UNITED STATES SENTENCING |
| ) | MEMORANDUM |
| v. ) | |
| ) | |
| CORNELIO MATA ESPINOZA, ) | |
| ) | Date: June 30, 2010 |
| ) | Time: 2:15 p.m. |
| Defendant. ) | Court: Hon. Charles R. Breyer |
| ) | |
| ) | |

On September 23, 2009, the defendant pled guilty to Count One of the Indictment charging him with knowingly and intentionally conspiring to possess with intent to distribute and to distribute 1 kilogram or more of a mixture or substance containing a detectable amount of heroin, and 50 grams or more of methamphetamine, in violation of Title 21, United States Code, Sections 846, 841(b)(1)(A). According to the terms of the defendant's plea agreement, the parties agreed that the appropriate sentence in this case is between 324 and 192

//

//

GOVERNMENT'S SENTENCING MEMORANDUM
No. CR 09-0103 CRB                    -1-

months.

On June 16, 2010, the government received the final Presentence Report ("PSR") in this matter. The PSR stated that the "nature, circumstances, and seriousness of the instant offense are particularly disturbing" and recommended a low-end guideline sentence of 262 months.[1] For the reasons detailed below, the government concurs with the PSR's recommended sentence.

## BACKGROUND

The government's long term investigation into Rafael Franco Perez's drug organization began in the fall of 2006 and concluded with nine individuals, including the defendant, being arrested on February 4, 2009. During the government's investigation, it became clear that the organization imported drugs into the United States through the Mexican border and distributed kilogram-quantities of controlled substances, in particular crystal methamphetamine and heroin, in and around the San Francisco Bay Area. As detailed in his plea agreement, the defendant acted as a manger in the organization and supplied other members of the conspiracy, most notably co-defendants Veronica Alvarado Gutierrez and Janetta Johnson, with large amounts of heroin and methamphetamine over a two-year period.

On January 9, 2008, the defendant was arrested on state court felony drug charges and was taken into custody. Despite being in custody, the defendant was able to instruct Gutierrez to begin contacting his customers and suppliers herself. Gutierrez followed the defendant's instructions and the narcotics operation continued to run smoothly. On July 18, 2008, the defendant was convicted of Transport/Sell Heroin (felony) in San Francisco Superior Court and received a sentence of one year jail and three years probation. He was deported to Mexico on September 9, 2008. However, the defendant quickly returned to the United States and

---

[1] As will be discussed below, the government agrees with the PSR's assertion that the parties miscalculated the defendant's guideline range in the plea agreement. The government agrees with the PSR's conclusion that the defendant's adjusted offense level is 34 and his guideline range is 262-327 months. Accordingly, the government will now recommend that the defendant receive a sentence of 262 months, the low-end of his guideline range, rather than 324 months as stated in the plea agreement.

reestablished contact with Gutierrez and Franco Perez in order to resume his drug trafficking activities. On February 4, 2009, federal agents searched the defendant's residence in Richmond, California, and found approximately 485 grams of methamphetamine, 101.4 grams of heroin, and $39,215 in cash.

## LEGAL STANDARD

Under Ninth Circuit case law, the Court should impose a sentence sufficient, but not greater than necessary, to reflect the purposes of sentencing that Congress identified in 18 U.S.C. § 3553(a)(2). *United States v. Carty*, 520 F.3d 984, 991 (9th Cir. 2008). The Court should begin the process of determining an appropriate sentence by calculating the correct guidelines range. *Carty*, 520 F.3d at 991.

Although the guidelines are not binding, they "reflect a rough approximation of sentences that might achieve section 3553(a)'s objectives." *United States v. Rita*, 127 S. Ct. 2456, 2464 (2007). The guidelines range will be the starting point and the initial benchmark for the sentence. *Carty*, 520 F.3d at 991. The Court should keep the guidelines range in mind throughout the process, allow the parties to argue for a sentence they believe is appropriate, and consider the factors identified in 18 U.S.C. § 3553(a). *Id.*

If the Court imposes a sentence outside the guidelines range, it should ensure that its justification for deviating from the range is sufficiently compelling to support the degree of variance in the sentence that it imposes. *Carty*, 520 F.3d at 991. The Court should make an individualized determination based on the facts of each case. *Id.* The Court, however, is not required to raise every possible relevant issue sua sponte. *Id.*

## ARGUMENT

**A.     The Correct Guidelines Range Is 262 to 327 Months In Prison**

1.     The Correct Guidelines Calculation Is Level 34

Although not reflected in the defendant's plea agreement, the parties now agree with the Probation Office that the following sentencing guidelines calculation is correct:

| | | |
|---|---|---|
| Base offense level | USSG § 2D1.1(c)(3) | 34 |
| Manger/Supervisor Role Enhancement | USSG §3B1.1(b) | +3 |
| Defendant accepted responsibility | USSG §3E1.1(a)+(b) | -3 |
| Total offense level | | 34 |

(PSR ¶¶ 29-41.)

    2.    <u>The Defendant's Criminal History Category Is CHC VI</u>

The government agrees with the Probation Office's calculation of the defendant's criminal history, resulting in a Criminal History Category of III. (PSR ¶ 49.) However, given that the defendant is a Career Offender within the meaning of USSG § 4B1.1(a), a Criminal History Category of VI should be applied. *See* U.S.S.G. § 4B1.1(b).

    3.    <u>The Correct Guidelines Range Is 262-327 Months to In Prison</u>

The guidelines range provided for Offense Level 34 and Criminal History Category VI is 262 to 327 months in prison. *See* U.S.S.G., Sentencing Table. The sentencing range lies in Zone D of the Sentencing Table, and the sentence must therefore be served in prison. *Id*.

**B.**    **Prison Sentence Of 262 Months Satisfies The 3553(a) Factors**

Analysis of the Guidelines and § 3553(a) shows that 262 months in prison is a reasonable and appropriate sentence in this case, and for this defendant.

    **1.**    **262 Months In Prison Is An Appropriate Sentence Considering The Nature And Circumstances Of The Offense, And The Defendant's History And Characteristics – § 3553(a)(1)**

    a.    <u>The Defendant's History And Characteristics Warrant A 262 Month Sentence</u>

It appears that the defendant does not object to the proposed offense level computations or the resulting advisory guidelines range. However, the defendant seeks a downward variance from that range. Given the defendant's history of flagrantly violated the criminal and immigration laws of the United States, the government does not believe that the defendant deserves a variance from the guidelines range in this case.

1    The defendant began living in the United States in 2000 and wasted no time getting involved in drug trafficking.  On March 28, 2001, the defendant was arrested by the San Francisco Police Department ("SFPD") after a search of his residence revealed heroin and cocaine residue, two scales, and over $5000 in cash.  This charge was ultimately dismissed.  On June 4, 2002, the defendant was arrested again by the SFPD after a search of his car revealed 24 bindles of heroin.  Again, the charges against the defendant were inexplicably dismissed.  However, the defendant's luck changed on August 3, 2002, when he was arrested by the SFPD after a search of the defendant's car and person revealed approximately 28 grams of heroin.  This time, the defendant was convicted of Possession for Sale of Heroin (felony).[2]  The defendant's conviction resulted in a 30 day jail sentence and he was deported to Mexico on November 1, 2002.  At the time he was deported, the defendant had been arrested for drug trafficking in San Francisco on four separate occasions in only 18 months.

Undeterred by his four arrests and one felony conviction, the defendant illegally returned to the United States and continued selling drugs.  On October 7, 2004, the defendant was arrested by the SFPD after search of his car revealed 69.61 grams of heroin.  On January 7, 2005, the defendant was convicted of Transport/Sell Heroin (felony) and sentenced to nine months in jail.  He was deported to Mexico on February 22, 2005.

Despite two felony convictions and two deportations, the defendant once again illegally returned to the United States.  On January 9, 2008, the defendant was arrested by the SFPD after a search of the defendant's car revealed large amounts of heroin and methamphetamine.  On July 18, 2008, the defendant was convicted of Transport/Sell Heroin (felony) and sentenced to one year in jail.  He was deported to Mexico, for a third time, on September 9, 2008.

Given the pattern of behavior exhibited by the defendant, the next event should not surprise the Court.  Yet again, the defendant illegally returned to the United States and was intercepted on a federally authorized wiretap talking to Franco Perez in October 2008.  Shortly thereafter, the defendant was again arrested in connection with the instant case after federal agents

---

[2]On September 3, 2002, while the felony charge was pending, the defendant was yet again arrested for dealing heroin in San Francisco.

GOVERNMENT'S SENTENCING MEMORANDUM
No. CR 09-0103 CRB                    -5-

searched the defendant's residence and found approximately 485 grams of methamphetamine, 101.4 grams of heroin, and $39,215 in cash.

It is undisputed that the defendant's livelihood in the United States has been derived from one simple source – selling illegal drugs. A review of the defendant's record indicates that he meets both the statutory and common definitions of a "career offender." It does not appear that the defendant has ever held a legitimate job in the United States or contributed to society in any meaningful way. Rather, the defendant consistently immersed himself in drug trafficking, and despite numerous convictions and deportations, he rose to the level of a manger within Franco Perez's drug organization.

The level of the defendant's involvement in illustrated well by his conduct in 2006 and 2007. During this time, the defendant consistently supplied Gutierrez with large amounts of heroin, and in turn, Guterriez supplied heroin to co-defendant Anthony Johnston. Johnston then sold the heroin to the confidential informant in this case. In his plea agreement, the defendant admitted that between November 28, 2006 and November 28, 2007, he supplied Gutierrez with heroin, which she then sold to Johnston, on 16 separate occasions, totaling 1,722.57 grams. While this amount alone is staggering, it reflects only those sales made by co-defendant Anthony Johnston to the confidential informant in case. The government can only speculate, but the Court can imagine, how many other street level dealers the defendant and Gutierrez may have supplied during this time period.

While the defendant's proclivity for drug dealing is undoubtedly profound, the most disturbing aspect of the defendant's character is his brazen disrespect for the criminal and immigration laws of the United States. The defendant's impressive rap sheet, accumulated in only seven years, sounds like a broken record – arrest, felony conviction, deportation, arrest, felony conviction, deportation, arrest, felony conviction, deportation, arrest, felony conviction. The defendant's latest deportation and illegal reentry are particularly illustrative of his character. After suffering his third felony drug conviction, the defendant was deported to Mexico on September 9, 2008. <u>Only one month later</u>, the defendant illegally entered the United States and started dealing drugs, as evidence by his intercepted conversations with Franco Perez. The defendant's conduct

GOVERNMENT'S SENTENCING MEMORANDUM
No. CR 09-0103 CRB                          -6-

sends a clear message to the Court – the defendant simply refuses to obey the laws of the United States.

Despite this pattern of criminal behavior, the defendant urges the Court to grant him a downward variance. No such variance is warranted. The defendant argues for a downward variance because "there are no allegations of guns or violence in this case or in any of Mr. Mata Espinoza's priors." (Def. Sent. Memo at 2:6-7.) However, the defendant's argument assumes that his crimes did not harm society simply because violence was not involved. In evaluating this case, the government urges to the Court to consider the harm that inevitably resulted from the defendant's drug trafficking, including that heroin and methamphetamine addiction carries a high cost to the user, in terms of quality of life, deteriorating health and premature death.

The defendant also argues for a downward variance because the Court "should place great value on Mr. Mata Espinoza's full acceptance of responsibility and his decisions to plead guilty in this case." (Def. Sent. Memo at 3:11-12.) However, the defendant has already received credit for accepting responsibility in this case. The defendant's base level offense of 37 was adjusted to 34 when he received a three-level acceptance of responsibility reduction pursuant to U.S.S.G. § 3E1.1. Prior to the reduction, the defendant faced a guidelines range of 360 months to life in prison. However, after the reduction, the defendant faces a guidelines range of 262 to 327 months in prison. Using the low-end of the guidelines as a guide, the defendant has already received a reduction of 98 months for accepting responsibility in this case. Therefore, the three-level reduction for acceptance of responsibility in the defendant's plea agreement had a significant impact on his guidelines. Any further reduction would simply result in a undeserved windfall to the defendant.

### 2. 262 Months In Prison Should Deter The Defendant From Further Illegal Activity and Protect the Public from Further Crimes– §3553(a)(2)(B)+(C)

The defendant has been convicted of four drug felonies and been deported three times since he began living in the United States in 2000. Despite the sentences he has received, the defendant has continued to engage in narcotics trafficking. Without question, the defendant has shown that he is a menace to the public in general. In the Government's opinion, he is the exactly

1 the type of defendant for whom the career offender guidelines are established, and he should be
2 sentenced accordingly. By imposing the term proposed here – 262 months – the Court will send a
3 message to address the seriousness of this offense, promote respect for the law, provide just
4 punishment, and deter the defendant from future criminal conduct.

## CONCLUSION

Based on the foregoing, the Government recommends a sentence of a term of imprisonment of 262 months; five years of supervised release (with conditions to be fixed by the Court); and a $100 special assessment.

DATED: June 23, 2010

                                                          Respectfully submitted,

                                                          JOSEPH P. RUSSONIELLO
                                                          United States Attorney

                                                             /s/
                                                          AARON D. WEGNER
                                                          Assistant United States Attorney